# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDREY MCDANIELS,** | : | |
| **Petitioner,** | : | |
| **v.** | : | **CIVIL NO. 11-5679** |
| | : | |
| **WINSTEAD, et al.,** | : | |
| **Respondents.** | : | |
| | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                                     **JULY 1, 2014**

### INTRODUCTION

At Petitioner Audrey McDaniels's first trial, she was acquitted of first and third degree murder. The Commonwealth of Pennsylvania, Respondent here, appealed the acquittal of third degree murder, which was reversed. The Commonwealth retried McDaniels; she was acquitted of involuntary manslaughter but convicted of third degree murder. She is currently serving a sentence of incarceration. McDaniels petitioned this Court for a writ of habeas corpus, and the petition was referred to Magistrate Judge M. Faith Angell. Judge Angell recommended that the petition be dismissed for failure to exhaust state remedies. Notwithstanding Judge Angell's careful and thorough analysis, this Court will not approve her recommendation. For the reasons below, the Court holds that McDaniels is in custody in violation of the Double Jeopardy Clause of the United States Constitution and that the writ must be granted. Furthermore, because McDaniels has been acquitted of all charges filed against her, the Commonwealth will be ordered to release her forthwith.

## I.        Overview and Procedural History

This peculiar and troubling case challenges that petitioner Audrey McDaniels is incarcerated in violation of the United States Constitution. Her most substantial claim is that the

protections of the Double Jeopardy Clause were violated when she was tried a second time for the murder of her stepson, Brahim Dukes. She also claims that her second trial counsel was ineffective for failing to investigate and call at trial Dukes's treating physician.

Dukes was 18 years old, but he could neither speak nor care for himself. In late December 2001, Dukes's father was incarcerated, and McDaniels was the only adult in charge of him. On December 29, 2001, McDaniels called 911 and reported that Dukes had had a temper tantrum and collapsed on the floor. Paramedics responded and discovered Dukes in a room that measured six feet by four feet nine inches. The room reeked of human waste, and it appeared that Dukes had spent some time scratching the door from the inside. Dukes showed no vital signs and was pronounced dead on his arrival at the hospital. The causes of death were starvation and dehydration.

McDaniels was charged with first degree murder and the lesser included offenses of third degree murder and involuntary manslaughter. At trial, after the close of the Commonwealth's case in chief, the court entered a judgment of acquittal on the charge of first degree murder. On July 12, 2004, at the close of the trial, the jury was instructed on third degree murder and involuntary manslaughter. As discussed in greater detail below, the foreman reported that the jury was deadlocked, and the judge declared a mistrial. Approximately five minutes later, the judge and counsel for both the defense and prosecution went to the jury room to talk with the jurors. There they discovered, based on notes on a white board, that the jury had intended to acquit McDaniels of third degree murder and that they were only deadlocked with respect to the involuntary manslaughter charge. The judge brought the jury back into court and recorded a verdict of not guilty with respect to third degree murder and again declared a mistrial with respect to involuntary manslaughter.

2

The Commonwealth appealed to the Superior Court, which reversed the entry of acquittal on third degree murder and remanded the case for retrial. McDaniels moved the Superior Court for reconsideration, which was denied, and she petitioned the Supreme Court of Pennsylvania for allowance of appeal, which was also denied. She was retried for third degree murder and involuntary manslaughter (the Commonwealth did not appeal the acquittal of first degree murder). On May 3, 2007, the jury returned a verdict of guilty on third degree murder, but not guilty of involuntary manslaughter.[1] McDaniels, through counsel, appealed to the Superior Court, lost, petitioned the Supreme Court for allowance of appeal, which was denied, filed a counseled petition pursuant to Pennsylvania's Post-Conviction Review Act ("PCRA"), which was denied, filed an appeal (*pro se*) to the Superior Court, which was dismissed when she failed to file a brief, and then petitioned this Court for a writ of habeas corpus. Counsel was appointed, and he amended her habeas petition. The petition was referred to Judge Angell, who filed a report and recommendation ("R&R") concluding that the petition should be denied because McDaniels's claims are unexhausted and procedurally defaulted. McDaniels timely objected. The Court has conducted a *de novo* review of the record, and this Memorandum Opinion resolves McDaniels's objections.

The underlying facts and McDaniels's arguments about them must be laid out in some detail because the Commonwealth argues that McDaniels failed to exhaust her claims. As discussed at greater length below, in order to evaluate this contention, the Court will have to conduct a thorough examination of the state courts' records.

## II.    Background

---

[1] Although this verdict is inconsistent, since all of the elements of involuntary manslaughter are also elements of third degree murder, the Supreme Court has held that such verdicts have no constitutional infirmity. *United States v. Powell*, 469 U.S. 57, 64-66 (1984).

On July 12, 2004, the jury in McDaniels's first trial began to deliberate. At some point the next day, the jury entered the courtroom, and the following scene played out. The crux of this unusual case will be presented at length:

> THE COURT: For the record, the jury sent exhibit number four. "Your Honor, we are hopelessly deadlocked at this time and unable to reach a verdict." Now there were two separate charges in this case . . . . Was there an agreement on any of the two charges?
>
> THE FOREMAN: Yes, Your Honor.
>
> THE COURT: There was?
>
> THE FOREMAN: Yes.
>
> THE COURT: What was the agreement?
>
> THE FOREMAN: That we had agreement on involuntary manslaughter—
>
> JUROR: No.
>
> THE FOREMAN: I mean third degree, I am sorry.
>
> THE COURT: You agreed on third degree?
>
> JUROR: No.
>
> THE FOREMAN: No, we did not agree, I am sorry.
>
> THE COURT: You did not agree. And you did not agree on involuntary?
>
> THE FOREMAN: We had—some did agree on involuntary.
>
> THE COURT: All right. The point is, is there any possibility of a verdict in this case?
>
> THE FOREMAN: At this point, Your Honor, I don't think so.
>
> THE COURT: Okay. Well, I asked you before, and I will ask you again, if any further deliberations will prove fruitful I will send you back. But if you don't think so then we'll just end it right here. Does anybody on the jury think that further deliberations will be worthwhile? No response.[2]

---

[2] It is unclear in the transcript whether the judge said "No response" or whether the court reporter noted the lack of a response with these words.

THE COURT CRIER: For the record, there is nothing on the verdict sheet.

THE COURT: All right. Okay. This case will have to be retried before another jury. That's the problem. As the foreman, you are telling me there is no hope for a decision in this case?

THE FOREMAN: No, sir.

THE COURT: Okay. All right. With that, the jury will be discharged. And I thank you for trying, and thank you for your services. This case will have to be retried on another date before probably a different jury, maybe even a different judge. But thank you anyway. With that, you are free to talk about the case when you leave.
(Jurors are excused)

THE COURT: We'll declare it a mistrial.

MR. STRETTON [Defense counsel]: Can we go back and talk to the jury?

THE COURT: Sure you can. I have no problem with that at all.[3]

There followed a brief hearing on a motion for bail. When that concluded, defense counsel

reiterated his request to talk to the jury:

MR. STRETTON: Can we go back and knock on the door?

THE COURT:  If you want to speak to the jury, yes.

MR. STRETTON: I would like to.
(All Counsel and the Court go to the jury room.)

*          *          *

THE COURT: On the record. After the jury went to the jury room, there was a conversation concerning the understanding of my question and the jury explained that they did not fully understand what I was asking. And that in fact, they all had agreed that it was not guilty as to third degree murder. The only thing that they could not agree on is whether or not it was involuntary manslaughter. So with that, Counsel requested that the jury be re-established into the jury box where they are now.
              And I ask the foreman to rise and announce to the Court what was the decision of the jury on third degree murder?

THE FOREMAN: Third degree?

_____

[3] Hr'g Tr. at at 7:10–10:2, *Commonwealth v. McDaniels*, No. 1110-2002 (July 13, 2004).

THE COURT: Yes.

THE FOREMAN: Not guilty.

THE COURT: Did everybody agree to that?

JURORS: Yes.

MR. STRETTON: Judge, call you pole [sic] the jury on that issue.

THE COURT: Everybody just said, yes. Everybody just said, yes.

JURORS: Yes.

THE COURT: Okay. Is there anybody that says, no? (No response from the jury.)
    Okay. The jury has unanimously said that it was not guilty as to third degree murder. And as to involuntary could you agree?

THE FOREMAN: Involuntary we had some that agreed.

THE COURT: Some agreed and some did not.

THE FOREMAN: Some did not, yes.

THE COURT: Okay. So that's where the jury was deadlocked. Okay. With that, the jury can retire.

MR. STRETTON: Can they fill out the verdict slip correctly and sign it then.

THE COURT: Sure.

MR. STRETTON: I would still like to talk to the jury when we're done.

THE COURT: If you want to, go ahead.

MR. STRETTON: Before you leave the bench, could you then record that verdict officially as not guilty as to third degree.

THE COURT: All right. Not guilty of third, and hopelessly deadlocked on involuntary.[4]

There followed further discussion about bail, and proceedings closed shortly thereafter.

---

[4] *Id.* at 19:25–22:12.

After the court recorded a verdict of not guilty of third degree murder, the Commonwealth sought to reinstate the charge. The judge issued an opinion holding that the court "simply correct[ed] a mistake on the record" pursuant to its "'duty' to change defendant's verdict to not guilty of third degree murder once it became apparent that this was the true verdict of the jury at the time the verdict was recorded."[5] The court stated that it took its actions in the interests of justice and that "[t]he rationale 'in the interests of justice,' employed to rectify errors which would otherwise result in unfairness, is deeply rooted in both federal jurisprudence and the common law of Pennsylvania."[6] Furthermore, the court held that "judicial intervention to allow the jury to correct a mistakenly recorded verdict was required in order to prevent defendant from being tried a second time for a charge for which the jury intended her to be acquitted. Changing the jury's verdict was necessary to prevent defendant from being placed in double jeopardy, as prohibited by the federal constitution."[7]

The Commonwealth appealed to the Superior Court. McDaniels moved to quash the appeal, arguing that the case should proceed to trial only on the involuntary manslaughter charge. She also filed a responsive brief arguing that the Superior Court lacked jurisdiction over the Commonwealth's appeal, characterizing that Commonwealth as "seeking to overturn the verdict of not guilty on murder of the third degree."[8] In her brief, she relied heavily on Pennsylvania law relating to when it is appropriate to "mold" a jury's verdict.[9]

---

[5] *Commonwealth. v. McDaniels*, C.P. 0212-1110, slip. op. at 2 (Pa. Com. Pl. Jul. 27, 2004).

[6] *Id.* at 3.

[7] *Id.*

[8] Appellee's Br. 12, ECF No. 10-8.

[9] *Id.* at 17–19.

The Superior Court reversed, holding that the not guilty verdict was a "legal nullity" and that McDaniels could be retried on third degree murder.[10] As previously stated, she was retried, adjudged guilty, appealed and engaged in some state collateral review proceedings. After the conclusion of her appeal to the Superior Court on collateral review, she filed a petition for a writ of habeas corpus in this Court.

## III.  Exhaustion and Procedural Default

In order to obtain habeas relief, a state prisoner must exhaust available state remedies before filing a habeas petition.[11] Exhaustion requires that the grounds for relief be "fairly presented"[12] to "one complete round of the State's established appellate review process."[13] In order to present a constitutional claim fairly to state courts, habeas petitioners need not cite "book and verse on the federal constitution;" rather, "the substance of a federal habeas corpus claim must first be presented to the state courts."[14]

The Third Circuit has held that "[a] determination of whether the substance of [a] claim was advanced in the state proceedings requires 'a searching scrutiny by the federal habeas court of the points that were raised in the state tribunals, in order to ensure that the state system was granted a fair opportunity to confront arguments that are propounded to the federal habeas courts.'"[15] When a petitioner does not cite "book and verse" of the Constitution,

---

[10] *Commonwealth v. McDaniels*, 886 A.2d 682, 686 (Pa. Super. Ct. 2005).

[11] 28 U.S.C. 2254(b)(1)(A).

[12] *Picard v. Connor*, 404 U.S. 270, 275 (U.S. 1971).

[13] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[14] *Picard*, 404 U.S. at 278.

[15] *Bisaccia v. Attorney Gen. of State of N. J.*, 623 F.2d 307, 310 (3d Cir. 1980) (quoting *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir. 1976) (en banc)).

the required message can be conveyed through (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.[16]

A claim is fairly presented where "the method of analysis asserted in the federal courts was readily available to the state court."[17]

To illustrate how little it takes in certain circumstances to present a claim fairly to the state courts, consider *Bisaccia v. Attorney General*. There, the Third Circuit held that a due process violation was fairly presented to the state courts—even though the petitioner did not cite the federal Constitution—when a dissent in the Supreme Court of New Jersey described the trial as "patently unfair." The Third Circuit held that this "statement that the trial was 'patently unfair' is a description similar to the traditional characterizations used to assess purported Fourteenth Amendment due process violations . . . . Particularly in view of [the dissenting justice's] finding that the admission of the evidence was 'patently unfair,' thereby casting his dissent in constitutional language, this is not a case . . . where the state courts had no indication of constitutional infirmity."[18]

If a claim is unexhausted, a court may not award habeas relief. A claim is deemed exhausted if there is no available state remedy.[19] However, if there is no available remedy (or presenting the claim to the state would be futile) *because* the petitioner failed to exhaust his claim, as when a statute of limitations has expired, the respondent may raise the affirmative

---

[16] *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (internal quotation marks omitted).

[17] *Bisaccia* v. *Attorney Gen.* 623 F.2d 307, 310 (3d Cir. 1980) (internal quotation marks omitted).

[18] *Id.* at 311.

[19] 28 U.S.C. § 2254(c).

defense of procedural default.[20] In this case, respondent has raised the defense of procedural

default. There is no dispute that any state process for McDaniels would be futile, and therefore if

her claims are unexhausted, they are also procedurally defaulted. If a claim is procedurally

defaulted, the default may be overcome if the habeas petitioner can demonstrate cause for the

default or if overcoming the default is necessary to avoid a fundamental miscarriage of justice.

## IV.    Double Jeopardy

### A.   The Claim is Exhausted

After surveying the law of exhaustion and procedural default, the R&R relates that after

McDaniels lost the direct appeal of her first trial, she was retried and convicted, following which

she appealed without raising the double-jeopardy issue. The R&R's discussion of whether

McDaniels fairly presented her double jeopardy claim concludes:

> The record reveals that the issue of double jeopardy was not raised in the
> state court system. As a result, this claim, as presented herein, has not been fairly
> presented to all levels of the state judicial system. Consequently, it is unexhausted
> and procedurally defaulted, as it is too late to return to the state courts with it.
> This claim is not properly before this Court, and nothing in the record supports a
> finding of cause and prejudice or a miscarriage of justice to excuse its procedural
> default.[21]

Although not entirely clear on this point, the R&R appears to have focused on

McDaniels's presentation of her double jeopardy argument to the state courts following her

second trial and conviction. However, exhaustion requires that "state prisoners . . . give the state

courts *one* full opportunity to resolve any constitutional issues by invoking *one* complete round

of the State's established appellate review process."[22] By way of example, it is well established

that a claim properly presented at all relevant levels of direct review need not be brought in state

---

[20] *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

[21] Report & Recommendation 19, Oct. 12, 2012, ECF No. 26 (footnote omitted).

[22] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added).

collateral proceedings before it will be exhausted for federal habeas purposes.[23] The basis for this rule is that when a full round of appellate litigation in the state has not resulted in relief, "it is fair to assume that further state proceedings would be useless."[24] In the double jeopardy context, a claim is exhausted if presented on direct appeal of the first criminal trial.[25]

To answer the question whether McDaniels exhausted her double jeopardy claim on direct review of her first criminal trial, the Court must examine her arguments made to the Superior Court.[26] McDaniels's brief to the Superior Court stated, "The Commonwealth is seeking to overturn the verdict of not guilty on murder of the third degree and has asked this Honorable Court to review the same."[27] The opinion from which the Commonwealth appealed had held, "Changing the jury's verdict was necessary to prevent defendant from being placed in double jeopardy, as prohibited by the federal constitution."[28] McDaniels contested the Superior Court's jurisdiction over the appeal, and it is well established that the Double Jeopardy Clause deprives appellate courts of jurisdiction over appeals from acquittals.[29] McDaniels's brief continued by laying out the facts of the conclusion of the first trial in detail, when twelve people

---

[23] *Brown v. Allen*, 344 U.S. 443, 447 (U.S. 1953).

[24] *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

[25] *Justices of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 303 (1984) ("Because the [Double Jeopardy] Clause protects interests wholly unrelated to the propriety of any subsequent conviction, a requirement that a defendant run the entire gamut of state procedures, including retrial, prior to consideration of his claim in federal court, would require him to sacrifice one of the protections of the Double Jeopardy Clause." (internal quotation marks omitted)); *United States ex rel. Webb v. Ct. of Common Pleas of Phila. Cnty.*, 516 F.2d 1034, 1037 (3d Cir. 1975); *United States ex rel. Russo v. Super. Ct. of N.J., Law Div., Passaic Cnty.*, 483 F.2d 7, 12 (3d Cir. 1973).

[26] Whether a claim must be presented to a state supreme court or only to an intermediate appellate court turns on how a state characterizes review by the highest court; in Pennsylvania, exhaustion requires only presentation to Superior Court. *Lambert v. Blackwell*, 387 F.3d 210, 233–35 (3d Cir. 2004).

[27] Appellee's Br. 12, ECF No. 10-8..

[28] *Id.*

[29] *United States v. Sisson*, 399 U.S. 267, 289–90 & n.18 (1970); *United States v. Jenkins*, 420 U.S. 358, 360 (1975) (affirming lower court that "dismissed the appeal 'for lack of jurisdiction on the ground that the Double Jeopardy Clause prohibits further prosecution.'").

previously constituted as a jury assembled in the jury box of a courtroom and responded to a judge's question that their verdict was "not guilty." She then turned to her legal argument, which focused on the contention that it was appropriate for the judge to allow the jury to correct its statement that it was deadlocked and to render a verdict. In building this argument, McDaniels relied on *Commonwealth v. Johnson*, which had held that "[b]oth the Federal and State Constitutions protect individuals from being deprived of life, liberty, and property without due process of law. To deprive a man of his liberty because of a certain criminal charge made against him, after he had been formally acquitted of that charge by a jury would be a violation of his constitutional rights."[30]

The next section of her legal argument relied on cases from outside of Pennsylvania with arguably similar facts to this case where courts had recognized the power to amend jury verdicts. Relevant here, she cited a lengthy Connecticut case with about four pages devoted to the question of whether a verdict corrected from not guilty to guilty violated the Double Jeopardy Clause;[31] a Massachusetts case where the court held that "erroneous 'not guilty' verdicts on the murder indictments do not preclude a new trial" where the verdicts were corrected to guilty and a different error required a new trial;[32] and a Kentucky case that held, "the jury was not reassembled to further deliberate a question under corrected instructions, but was reassembled to consider the same issue it had previously decided. As such, the second verdict rendered by it, finding [defendants] guilty . . . violated their right against double jeopardy."[33] She also cited a chapter of the American Law Reports on the propriety of altering jury verdicts, which discusses

---

[30] 59 A.2d 128 at 131 (Pa. 1948).

[31] *State v. Colon*, 864 A.2d 666, 781–84 (Conn. 2004).

[32] *Commonwealth v. Brown*, 323 N.E.2d 902, 905 (Mass. 1975).

[33] *Burchett v. Commonwealth*, 734 S.W.2d 818, 820 (Ky. Ct. App. 1987) (citation omitted).

the double jeopardy implications of many situations.[34] Her appellate brief concludes with the argument that the Superior Court lacked jurisdiction over the appeal.

It is true that McDaniels's brief before the Superior Court did not cite "book and verse" of the Constitution. However, she apprised the Superior Court of her double jeopardy claim by "reliance on state cases employing constitutional analysis in like fact situations, . . . assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and . . . allegation of a pattern of facts that is well within the mainstream of constitutional litigation."[35] As a general matter, it is hardly possible for a state to appeal an acquittal without calling to mind the Double Jeopardy Clause. And here, double jeopardy concerns were evident below, and the Commonwealth explicitly sought to retry a defendant who, arguably at least, had been acquitted. This pattern of facts is "well within the mainstream" of double jeopardy litigation. McDaniels further relied on factually analogous cases from other jurisdictions that considered double jeopardy implications, and her assertion of her right not to be retried again cries out that she claimed a double jeopardy violation. It is implausible that a trained lawyer or even a layperson could consider the facts of this case and not wonder whether the Double Jeopardy Clause has been violated. It also bears noting that the Commonwealth has repeatedly relied on the decision that the Superior Court handed down in the appeal from McDaniels's first trial for the general proposition that the Commonwealth is not "permitted to appeal from an acquittal due to double jeopardy protections."[36] In short, although McDaniels's lawyer focused

---

[34] 14 A.L.R. 5th 89 (1993) §§ 8, 11(b), 12(b) &13(a). For example, the chapter discusses a case where "the court stated that sending the jury back for what was in essence a second verdict violated the defendants' right against double jeopardy under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as their rights under similar provisions of the state constitution."

[35] *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (internal quotation marks omitted).

[36] Appellant's Br., *Commonwealth v. Alicea*, 2009 WL 5818538, *4 (Pa. Super. Ct. March 11, 2009); Appellant's Br., *Commonwealth v. Brown*, 2010 WL 5858775, *3 n.2 (Pa.Super. Ct. June 28, 2010); Appellant's Br.,

13

on the propriety of molding a jury verdict, as soon as the Commonwealth took an appeal from McDaniels's apparent acquittal, this became a double jeopardy case (as the trial court recognized), and McDaniels presented enough legal and factual argument to the Superior Court to apprise it of the nature of the double jeopardy claim, and that court issued a ruling that has subsequently been read by the Commonwealth as a double jeopardy decision. McDaniels has thus exhausted her double jeopardy claim.

### B. Section 2254(d) Does Not Bar Relief

#### 1. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not issue a writ of habeas corpus to a state prisoner unless the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."[37] Where, as here, a state court has adjudicated a claim on the merits,[38] the petition for the writ must be denied unless, as relevant here, "the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[39]

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision."[40]

---

*Commonwealth v. Nobles*, 2007 WL 4778162, *3 (Pa. Super. Ct. July 16, 2007) (all quoting *Commonwealth v. McDaniels*, 886 A.2d 682, 686 (Pa. Super. Ct. 2005) for the proposition that a Commonwealth appeal from a verdict of acquittal is "clearly impermissible").

[37] 28 U.S.C. § 2254(a).

[38] Where a state court denies relief and does not give a procedural reason for the denial, there is a presumption that the denial was on the merits. *Harrington v. Richter*, 131 S. Ct. 770, 784–85 (2011). Therefore, even if this Court did not consider Superior Court's holding in this case to turn on the Double Jeopardy Clause, the issue was still decided on the merits since neither party has rebutted the merits presumption.

[39] 28 U.S.C. § 2254(d)(1).

[40] *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases."[41] And "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."[42]

Federal courts sitting in habeas review of state convictions must show great deference both to the factual and the legal determinations of the state court that has passed on the prisoners' claims. State legal determinations will be disturbed only when they are "objectively unreasonable" and contain "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[43]

2.   The "Clearly Established" Law of the Supreme Court

The Fifth Amendment, incorporated against the states via the Due Process Clause of the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb in criminal or civil cases."[44] In order to claim the protections of the Clause, jeopardy must "attach," which occurs in jury trials when the jury is empanelled and sworn.[45] After jeopardy attaches, it concludes, among other situations, when a defendant is acquitted.[46] A final acquittal, even when "based upon an egregiously erroneous foundation,"[47]

---

[41] *Id.* at 405.

[42] *Id.* at 409.

[43] *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

[44] U.S. Const. amend. V, cl. 2.

[45] *Crist v. Bretz*, 437 U.S. 28, 38 (1978).

[46] *Green v. United States*, 355 U.S. 184, 188 (1957).

bars retrial and appeal. The only exception to this rule is that "[w]hen a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty."[48] An action by a trial court will be deemed an acquittal if "[i]t actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."[49] By contrast, an action by a trial court that appears to be an acquittal does not actually represent a resolution of a factual element if in performing the action the court lacks jurisdiction within the meaning of double jeopardy jurisprudence; or, to use the words of the Supreme Court, "An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense."[50] Jurisdiction for double jeopardy purposes is not a question of state law, but a more basic question of whether "the court had jurisdiction of the cause and of the party."[51]

The most factually on point Supreme Court case is *United States v. Martin Linen Supply Co.*[52] In that case, a "hopelessly deadlocked jury was discharged when unable to agree upon a

---

[47] *Fong Foo v. United States*, 369 U.S. 141, 143 (1962).

[48] *Smith v. Massachusetts*, 543 U.S. 462, 467 (2005). *Smith* was announced on February 22, 2005, before *McDaniels*, which was issued on October 13, 2005. *Smith*—which in any event did not purport to change existing law in any respect—therefore represents clearly established Supreme Court precedent "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

[49] *Smith*,543 U.S. at 468.

[50] *Ball v. United States*, 163 U.S. 662, 669 (1896).

[51] *Benton v. Maryland*, 395 U.S. 784, 797 (1969) (quoting *Ball*, 163 U.S. at 669).

[52] 430 U.S. 564 (1977).

verdict."[53] After the discharge, the trial court granted a motion for judgment of acquittal under

Federal Rule of Criminal Procedure 29(c).[54] The government appealed. The Supreme Court held,

> The normal policy granting the Government the right to retry a defendant after a
> mistrial that does not determine the outcome of a trial, is not applicable since
> valid judgments of acquittal were entered on the express authority of, and strictly
> in compliance with, Rule 29(c). Those judgments, according to the very wording
> of the Rule, act to terminate a trial in which jeopardy has long since attached. And
> a successful governmental appeal reversing the judgments of acquittal would
> necessitate another trial, or, at least, further proceedings of some sort, devoted to
> the resolution of factual issues going to the elements of the offense charged.[55]

The Court continued that "the most fundamental rule in the history of double jeopardy

jurisprudence has been that a verdict of acquittal could not be reviewed, on error or otherwise,

without putting a defendant twice in jeopardy, and thereby violating the Constitution."[56] The

Court further held, "There can be no question that the judgments of acquittal entered here by the

District Court were 'acquittals' in substance as well as form. The District Court plainly granted

the Rule 29(c) motion on the view that the Government had not proved facts constituting [the

charged crime]."[57] The result of the case was that the Double Jeopardy Clause barred

reprosecution.

Finally, in *Smith v. Massachusetts*, in the middle of a jury trial, a judge entered a verdict

of acquittal pursuant to Massachusetts Rule of Criminal Procedure 25(a) that the evidence was

---

[53] *Id.* at 565.

[54] At the time of *Martin Linen*, Rule 29(c) provided:
"(c) Motion after Discharge of Jury. If the jury returns a verdict of guilty or is discharged without having
returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is
discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned
the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court
may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has
been made prior to the submission of the case to the jury."

[55] 430 U.S. at 570 (citation, footnote, and internal quotation marks omitted).

[56] *Id.* at 571 (alterations omitted).

[57] *Id.* at 571–72.

insufficient to sustain a conviction.[58] The Supreme Judicial Court of Massachusetts held that as a matter of state law, the judge's action was not an acquittal because it represented a legal rather than a factual determination. The United States Supreme Court held that "Massachusetts' characterization of the required finding of not guilty . . . is, as a matter of double jeopardy law, not binding on us."[59] The Supreme Court applied *Martin Linen* and held that the acquittal by the judge "actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged."[60]

### 3.   The Superior Court's Ruling

In ruling on the Commonwealth's appeal, the Superior Court first noted that "it appears that the Commonwealth is appealing a verdict of acquittal, which is clearly impermissible."[61] The opinion does not explain why the appeal of an acquittal is impermissible, but there is no doubt that it is the Double Jeopardy Clause that generally bars such appeals.[62] The Court held that it had jurisdiction to entertain the appeal because "the same principles apply" as in appeals from pretrial orders quashing indictments.[63] The court then agreed with the Commonwealth that the jury's pronouncement of "not guilty" was a "legal nullity."[64] The Superior Court held that the

---

[58] 543 U.S. 462, 465 (2005).

[59] *Id.* at 468–69.

[60] *Id.* at 468.

[61] *Commonwealth v. McDaniels*, 886 A.2d 682, 686 (Pa. Super. Ct. 2005).

[62] *E.g.*, *Smith v. Massachusetts*, 543 U.S. 462 (2005); *see also* Appellant's Br., *Commonwealth. v. Brown*, 2010 WL 5858775, *3 (Pa. Super. Ct. June 28, 2010); Appellant's Br., *Commonwealth v. Alicea*, 2009 WL 5818538, *4 (Pa. Super. Ct. March 11, 2009); Appellant's Br., *Commonwealth v. Nobles*, 2007 WL 4778162, *3 (Pa. Super. Ct. July 16, 2007) (all relying on *Commonwealth v. McDaniels*, 886 A.2d 682, 686 (Pa. Super. 2005) for the proposition that a Commonwealth appeal from a verdict of acquittal is "'clearly impermissible'" (quoting *McDaniels*) "due to double jeopardy protections").

[63] *McDaniels*, 886 A.2d at 686.

[64] *Id.*

trial "court had no authority to reassemble the jury to allow them to render a different verdict than the one previously announced and recorded."[65]

The Superior Court relied on state law in reaching its conclusion, but this Court defers to the state court and reads its decision as having resolved McDaniels's federal double jeopardy claim on the merits. A fair reading of the decision is that the Superior Court determined that what happened in this case was not an egregiously erroneous acquittal, but rather an instance of a court acting outside its jurisdiction within the meaning of *Ball v. United States*, and therefore McDaniels could be reprosecuted.

4. The Superior Court's Ruling Cannot be Squared with the Clearly Established Law of the Supreme Court

As in *Martin Linen*, McDaniels's jury was "hopelessly deadlocked."[66] As in *Martin Linen*, the jury was discharged.[67] As in *Martin Linen*, a verdict of acquittal was entered after the jury discharge.[68] The only difference between *Martin Linen* and this case is that in *Martin Linen*, the trial judge acted in accordance with the applicable rules of criminal procedure. Here, rather than entertaining a Motion for Judgment of Acquittal After Discharge of Jury under Pennsylvania Rule of Criminal Procedure 608,[69] the trial judge brought the jury back into the

---

[65] *Id.* at 688.

[66] *Id.* at 684; *Martin Linen*, 430 U.S. at 565.

[67] *McDaniels*, 886 A.2d at 684; *Martin Linen*, 430 U.S. at 565.

[68] *McDaniels*, 886 A.2d at 684; *Martin Linen*, 430 U.S. at 566.

[69] Rule 608 provides: "(A) Time for Motion.
"(1) *Oral Motion.* An oral motion for judgment of acquittal may be made and decided at the time the jury is discharged without agreeing upon a verdict if the defendant so agrees on the record.
"(2) *Written Motion.* A written motion for judgment of acquittal shall be filed within 10 days after the jury has been discharged without agreeing upon a verdict.
"(B) Time for Decision on Motion.
"(1) A motion for judgment of acquittal after the jury has been discharged without agreeing upon a verdict shall be decided within 30 days after the motion is filed. If the judge fails to decide the motion within 30 days, the motion shall be deemed denied.

courtroom and had the jury record its own verdict of not guilty. The question before this Court therefore becomes, can the Pennsylvania trial judge's error of state law vitiate McDaniels's double jeopardy protection, when, had he and McDaniels's counsel followed the proper motion practice and entered a judgment of acquittal pursuant to Rule 608, there is no question that *Martin Linen* would have barred reprosecution?

To answer the question, the Court must consider the dictum quoted above from *Ball*: "An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense."[70] Although "[t]he concept of 'jurisdiction' in a double jeopardy context is a jurisprudential greased pig—easy to see, but tough to grasp,"[71] this much is clear: want of jurisdiction in the sense that *Ball* uses the term renders "*all the proceedings*" in a case void. Additionally, even if proceedings are "void" as a matter of state law, they may not be void under federal double jeopardy jurisprudence.[72]

There have not been a great many cases applying the relevant statement in *Ball*, but *Hoffler v. Bezio*, an opinion of the Second Circuit, is particularly instructive. The *Hoffler* case relied on an opinion by Judge Friendly explaining "that *Ball* referenced jurisdiction in the basic sense, asking only whether a cause of action under our law was asserted, and whether the court had power to determine whether it was or was not well founded in law and effect."[73] This

---

"(2) When a motion for judgment of acquittal is denied by operation of law under this rule, the clerk of courts shall enter an order on behalf of the court, and shall immediately notify the attorney for the Commonwealth, the defendant(s), and defense counsel that the motion is deemed denied."

[70] *Ball v. United States*, 163 U.S. 662, 669 (1896).

[71] *Boyd v. Meachum*, 77 F.3d 60, 64 (2d Cir. 1996).

[72] *Benton v. Maryland*, 395 U.S. 784, 796–97 (1969).

[73] *Hoffler v. Bezio*, 726 F.3d 144, 158 (2d Cir. 2013) (citing *United States v. Sabella*, 272 F.2d 206 (2d Cir.1959)). AEDPA constrains this Court's review to the way in which the Pennsylvania court applied Supreme

reading of *Ball* finds support in *Ball* itself,[74] as well as *Benton v. Maryland*, where a defendant was tried once under an indictment that was void under state law. In *Benton*, the Supreme Court held that since "the court had jurisdiction of the cause and of the party, its judgment is not void," and therefore Benton could not have been prosecuted a second time.[75]

In an argument perfectly analogous to the state's position in *Benton*, the Commonwealth here contends that the verdict at the first trial was void (or, to use the Commonwealth's term, a nullity). But *Benton* teaches that what is void as a matter of state law is not necessarily void as a matter of federal double jeopardy law.[76] There is no dispute that, as in *Benton*, the Court of Common Pleas had jurisdiction over McDaniels in the "basic sense," namely—as *Benton* puts it, quoting *Ball*—"jurisdiction of the cause and of the party."[77] There is also no dispute that other proceedings in the first trial, such as the mistrial on the involuntary manslaughter charge and the bail order entered after the reconstituted jury's verdict, were not void. Under *Ball*, when a court lacks jurisdiction, "all the proceedings" are void; here, because some of the proceedings were not void, the trial court must have had jurisdiction as *Ball* uses the term. When the trial court accepted the pronouncement that McDaniels was not guilty, McDaniels had not yet been sentenced, and there was still time for filing post-verdict motions, including a motion for

---

Court law, namely *Benton* and *Ball*. This Court relies on *Hoffler* for its crystallization of the meaning of *Ball* and *Benton*, not as an independent source of "clearly established federal law." Another thorough, scholarly, and persuasive opinion on the meaning of "jurisdiction" in double jeopardy cases may be found at *State v. Corrado*, 81 Wash. App. 640, 655–62 (1996).

[74] *Ball*, 163 U.S. at 669–70 ("[A]lthough the indictment was fatally defective, yet, if the court had jurisdiction of the cause and of the party, its judgment is not void, but only voidable by writ of error, and until so avoided cannot be collaterally impeached.").

[75] 395 U.S. 784, 797 (1969).

[76] *Id.*; *see also Smith v. Massachusetts*, 543 U.S. 462, 468–69 (2005) (emphasizing that state characterizations of state proceedings are "'as a matter of double jeopardy law, . . . not binding on'" federal courts (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144 n.5 (1986) (ellipsis in original)).

[77] *Id.*

acquittal under Pennsylvania Rule 608. In other words, even if the twelve people assembled in the jury box in the courtroom had ceased to be a "jury" under Pennsylvania law, the Court of Common Pleas still had the power to enter a verdict of acquittal, which it did (albeit with a jury as interlocutor). Because the court had jurisdiction over the criminal action and the defendant, as a matter of federal double jeopardy law, the verdict was not void, not a nullity.

Because the verdict taken by the first trial judge is not void, the question becomes whether the verdict was a "judgment of acquittal" for double-jeopardy purposes. The Supreme Court has stated that an "acquittal" for double jeopardy purposes is something that, "whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."[78] Even if it could be doubted that the jury's statement was a "judgment of acquittal," immediately following the jury's statement, defense counsel requested that the judge "record that verdict officially as not guilty as to third degree," which the judge did (without objection from the prosecution).[79] The Commonwealth does not argue and no state court has found that the verdict was really a dismissal[80] or lacked the finality of a true verdict.[81] The only argument that the jury's action in stating "not guilty" did not actually represent a resolution of the factual elements of the charge of third-degree murder is the legal nullity argument already discussed and rejected above.

One argument that the Superior Court reasonably applied Supreme Court precedent would be to conclude that *Martin Linen* is distinguishable because in *Martin Linen*, the "judgments of acquittal were entered on the express authority of, and strictly in compliance

---

[78] *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977).

[79] Hr'g Tr. 22:7-12, *Commonwealth v. McDaniels*, No. 1110-2002, (July 13, 2004.)

[80] *United States v. Scott*, 437 U.S. 82, 115 & n.11 (1978).

[81] *Price v. Vincent*, 538 U.S. 634, 637 (2003).

with" the applicable Rule of Criminal Procedure.[82] By contrast, the Court of Common Pleas in *McDaniels* bypassed Pennsylvania Rule of Criminal Procedure 608 and reconstituted the jury to correct its verdict, an act that the Superior Court held to be improper.[83] The distinction is unreasonable, though, because the Supreme Court has repeatedly held that an acquittal bars reprosecution even if it is "based upon an egregiously erroneous foundation."[84] Even if the trial court is "without power to direct acquittals under the circumstances disclosed by the record"[85] once an acquittal is entered, so long as it, "whatever its label . . . actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged,"[86] the Double Jeopardy Clause bars reprosecution.

As this Court must, it defers to the Superior Court's ruling on McDaniels's double jeopardy claim. The Court has accepted the factual findings of the state courts as true, and it has read the Superior Court's holding that the verdict was a legal nullity to mean that according to the Superior Court the trial court lacked jurisdiction within the meaning of *Ball*. Nevertheless, the ruling that a "legal nullity" under state law does not bar reprosecution is the opposite of what the Supreme Court held in *Benton*. It is therefore "contrary to" Supreme Court case law, within

---

[82] 430 U.S. at 570.

[83] The Commonwealth correctly argues that this Court may not second-guess the Superior Court's determination on this point as a matter of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Nevertheless, the Court may examine the event for the purpose of determining whether it was an acquittal under the Double Jeopardy Clause.

[84] *Fong Foo v. United States*, 369 U.S. 141, 143 (1962). The egregiously erroneous acquittals that the Supreme Court has held to bar reprosecution involved errors of substantive law, whereas the error in McDaniels was arguably procedural. But this distinction is not relevant for double jeopardy purposes because the way a state characterizes acquittals as a matter of state law is "'as a matter of double jeopardy law, . . . not binding on'" federal courts. *Smith v. Massachusetts*, 543 U.S. 462, 468–69 (2005) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140 n.5 (1986) (ellipsis in original)).

[85] *Fong Foo*, 369 U.S. at 142.

[86] *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977).

23

the meaning of § 2254(d)(1).[87] And it is impossible to apply the holding of *Martin Linen*, that a verdict of acquittal entered after a hopelessly deadlocked jury resulted in a mistrial bars reprosecution, to the facts of this case (where a verdict of acquittal was entered after a hopelessly deadlocked jury resulted in a mistrial) without granting relief. The Superior Court's decision was therefore an "unreasonable application" of Supreme Court case law, within the meaning of 2254(d)(1).[88]

The Superior Court committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"[89] when it held that McDaniels could be prosecuted again because the verdict was void under state law: that conclusion is exactly the opposite of the Supreme Court's holding in *Benton*. Similarly, it was "objectively unreasonable" not to apply *Martin Linen*.[90] That case is distinguishable only in the irrelevant aspect that the *Martin Linen* trial judge acted according to the appropriate criminal procedure rule, and there is no principled way to apply the facts of that case so as to conclude that double jeopardy was not violated here.[91]

The Commonwealth does not suggest, and the Court cannot conceive of, a way to read the Superior Court's opinion that is more favorable to the Commonwealth's position than that the trial court lacked jurisdiction within the meaning of *Ball* to enter the verdict of acquittal. The

---

[87] *See also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

[88] *See also id.* at 405.

[89] *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)).

[90] *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2010)).

[91] Acting within the rules of procedure is irrelevant because the state trial court's procedural error here rendered the acquittal void as a matter of state law. But *Benton* holds that acts that are void under state law are not necessarily void under federal law, and there is no question that the entry of acquittal here satisfied the Supreme Court's definition of "acquittal" for Double Jeopardy Clause purposes.

Commonwealth urges this Court to read the first trial as having terminated in a mistrial, but plainly it did not. A mistrial occurred, then a bail hearing, then what appeared to be a verdict of acquittal well within the time to make a motion for a verdict of acquittal under Rule 608, then the trial judge's opinion on entering the verdict of acquittal. No state court has held as a matter of fact that the first trial concluded in a mistrial, and holding that it terminated in a mistrial as a matter of law is irreconcilable with Supreme Court double jeopardy jurisprudence. Although this Court agrees with the Commonwealth that federal habeas courts cannot reexamine state-court determinations of state law, the question here is whether the state-law "legal nullity" was also a federal law nullity. *Benton* precludes such a ruling. For the reasons stated above, void or not under state law, the acquittal was valid as a matter of federal double jeopardy law.

### C.  Relief Under Section 2254(a)

It does not automatically follow from the fact that Petitioner satisfies § 2254(d) that she is in custody in violation of the Constitution and therefore entitled to relief under § 2254(a).[92] Here, however, the discussion above has made clear that not only was the adjudication of McDaniels's double jeopardy claim unreasonable, but the Double Jeopardy Clause entitles her to the writ of habeas corpus: jeopardy attached when the first jury was empanelled and sworn, and it concluded when the first trial court entered a verdict of acquittal. The Double Jeopardy Clause barred the reprosecution of McDaniels, and therefore the guilty verdict against her must be set aside.

A federal district court may issue a conditional or unconditional writ of habeas corpus. A conditional writ requires the state either to release or to retry the petitioner, while an unconditional writ prohibits reprosecution. A conditional writ is appropriate when it is possible

---

[92] *E.g. Lewis v. Comm'r of Correction*, 975 F. Supp. 2d 169, 173 (D. Conn. 2013).

to retry the petitioner in compliance with the Constitution, as for example, when the writ affords the state an opportunity to correct a *Brady* violation.[93] However, when a conviction is set aside as a double jeopardy violation, an unconditional writ is the only logical remedy because the holding that underpins the writ is that reprosecution would be unconstitutional.[94] As stated above, McDaniels has been charged with first degree murder, which has lesser included offenses of third degree murder and involuntary manslaughter. She has been acquitted of all three counts at different times. Reprosecution on any of these charges would be unconstitutional, and therefore an unconditional writ will issue.

At the same time, the Court is mindful that an unconditional writ is an extraordinary remedy. Therefore the Court will stay its Order for a period of thirty days to allow the Commonwealth to consider whether it will appeal. If the Commonwealth appeals, the Court will consider a motion to stay the writ pending appeal.[95]

### CONCLUSION

Issuing the writ should not—and does not—obscure the human tragedy at the center of this case. Brahim Dukes died young, neglected, in pain. As another judge has written, in horrifying cases, judges "hear the tortured voices of the victims crying out to [us] for vindication."[96] But vindication cannot come at the expense of constitutional rules. The Double

---

[93] *See, e.g.*, *Wilson v. Beard*, No. 02-cv-374, 2012 WL 1382447 (E.D. Pa. Apr. 20, 2012).

[94] *Cf. Crist v. Bretz*, 437 U.S. 28, 31 (1978); *see also* 2-3 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 33.2 ("[U]nconditional relief orders are required when a court concludes that the fact of the prosecution and not simply the manner in which the prosecution occurred violates the Constitution, thus requiring release from custody *with prejudice* to reprosecution. Falling into this category [is] . . . double jeopardy.").

[95] McDaniels has also objected to the R&R's determination that her ineffective-assistance-of-counsel claim was unexhausted and procedurally defaulted. The Court has reviewed the claim *de novo* and approves of the R&R's analysis and conclusion on this point.

[96] Alex Kosinski, "Tinkering With Death," 72 *The New Yorker* 48, 53 (Feb. 10, 1997).

Jeopardy clause is no antiquated technicality; it is a vital limit on governmental power. Applying the Constitution selectively would undermine a fundamental independent variable in our national experiment "that ours is a government of laws, not of men, and that we submit ourselves to rulers only if under rules."[97] It is for this reason that "[t]he constitutional rights of criminal defendants are granted to the innocent and the guilty alike,"[98] and only by applying constitutional rules faithfully—even, or especially, when we would prefer not to—do we assure ourselves that the Constitution meaningfully guides government actors in exercising their discretion to pursue the objects of their will.

Nor should this Opinion be read to condone highly unusual procedure that the court in McDaniels's first trial chose to record a verdict. The Superior Court rightly viewed the trial court's actions as egregiously erroneous. Nevertheless, this Court must recognize the constitutional significance of a verdict of acquittal.

AEDPA deference and habeas law in general serve the important purpose of guaranteeing that habeas does no more than "guard against extreme malfunctions in the state criminal justice systems."[99] This Court does not hesitate to conclude that such a malfunction occurred here: McDaniels has been tried for first degree murder, third degree murder, and involuntary manslaughter. She has been acquitted of all three counts at different times. Nonetheless, she has been imprisoned for a decade. The writ must be granted.

---

[97] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 646 (1952) (Jackson, J., concurring).

[98] *Kimmelman v. Morrison*, 477 U.S. 365, 380 (1986).

[99] *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1978) (Stevens, J., concurring in the judgment)).